HENRY W. AUSTIN AND MOSES L. PURVIN, ADMINISTRATORS (SUBSTITUTED FOR FREDERICK C. AUSTIN, EXECUTOR, DECEASED) OF THE ESTATE OF ANNA B. AUSTIN, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11705. Promulgated October 18, 1932.

*Isaac B. Lipson, Esq.*, for the petitioners.
*Ralph F. Staubly, Esq.*, for the respondent.

OPINION.

ARUNDELL: The respondent determined a deficiency in estate tax under the Revenue Act of 1921 in the amount of $144,923.15, and this proceeding is brought for the redetermination thereof.

A stipulation of facts was filed, which we adopt as our findings of fact. Only those facts necessary to an understanding of the two issues will be set forth in this opinion.

The first issue involves the inclusion in the estate of decedent of the value of property which was placed in trust in 1903 by the decedent. The trust, by its terms, was irrevocable. The income was to be paid to the grantor (decedent) during her life, and thereafter income to the extent of $6,000 annually was to be paid to her husband. Upon the death of the grantor the trustee was to pay over to designated persons and institutions various sums aggregating $100,000, of which counsel for respondent concedes that $70,000 should be excluded from the gross estate. Aside from the payments directed to be made upon the grantor's death, the trust was to continue until the death of the grantor's husband or until one of the grantor's two children reached thirty years of age, whichever occurred later, whereupon the trust was to terminate and the corpus to be paid over to the children or their heirs. Mrs. Austin, the grantor, died on June 30, 1922.

The parties agree that the trust deed and the property therein mentioned were delivered to the trustee; that the trust has remained in full force and effect; and that the trust was not made in contemplation of death.

The respondent has included the value of the trust property in decedent's gross estate on the ground that the trust was intended to take effect in possession or enjoyment at or after death, within the meaning of section 402 (c) of the Revenue Act of 1921.

We do not see wherein this case is distinguishable from a long line of cases heretofore decided, in which it is held that, under section 402 (c) of the Revenue Act of 1918 and corresponding provisions of later acts, property placed irrevocably in trust may not be included in the gross estate. See *Shukert* v. *Allen*, 273 U. S. 545; *May* v. *Heiner*, 281 U. S. 238; *Cover* v. *Burnet*, 53 Fed. (2d) 915 (reversing 17 B. T. A. 1177); *Stephen Peabody*, 24 B. T. A. 787; *Charles H. W. Foster*, 26 B. T. A. 708.

The case of *Klein* v. *United States*, 283 U. S. 231, cited by respondent is not in point. In that case the grantor conveyed a life estate with an express reservation of the fee in the event the grantee predeceased him, and the grantee was to take the fee only in the event she survived the grantor. In the present case we have no such reservation. The case of *Sargent* v. *White*, 50 Fed. (2d) 410, also

relied on by respondent is distinguishable on the same ground as the *Klein* case, and indeed is decided on authority of that case. In the *Sargent* case the decedent created a trust under which the corpus was to go to his wife if she survived him, and if she did not, then the property was to revest in the grantor. The opinion of the court says that, " It was clearly the intent of the decedent that the trust funds should not become absolutely vested during his life   *   *   *."

On authority of the cases above cited, we hold that respondent erred in including in the estate the value of the trust property.

The second issue is whether promissory notes containing a provision for cancellation of the obligation in the event of the death of the payee (decedent) prior to maturity, should be included in the gross estate.

From the stipulation and the documents attached thereto it appears that prior to 1917 decedent's daughter, Marion Ogden Richardson, and the daughter's husband, Harold A. Richardson, became indebted to various persons for substantial sums and as security for the debts they assigned to the creditors (1) an annuity of $12,000 in favor of Marion O. Richardson under a trust created by John H. Barker and (2) Marion O. Richardson's interest in the trust described under the first issue herein. The claims of the several creditors and the assignments as security therefor were acquired by James B. Forgan for the benefit of decedent. By codicils to her will, one dated February 6, 1917, and the other September 18, 1919, the decedent, after reciting the above facts, directed that upon her death the assignments of interests under the trusts be canceled "·and the debts and obligations secured thereby be released without any payment on the part of my said daughter." On November 17, 1920, the several interested parties, namely, Marion O. Richardson, Harold A. Richardson, Anna B. Austin (the decedent), and James B Forgan, entered into an agreement in which, after reciting that Marion O. Richardson was indebted to decedent in the sum of $175,-921.92 and that the assignments of interests in the trusts made by the daughter and her husband to secure their indebtedness had been acquired by Forgan for the benefit of decedent, the parties agreed, as far as material here: (1) That Marion O. Richardson would execute and deliver to decedent fifteen nonnegotiable promissory notes, payable in from one to fifteen years respectively, without interest, each of said notes to be in the sum of $12,000, except the last note was to be in the amount of $7,921.92; each of said notes to contain a provision to the effect that if decedent should die before maturity all obligation of the maker should cease; and that the daughter would not encumber her interest in or annuity from the Barker trust above mentioned; (2) that Forgan would assign to decedent

and her daughter the interests in the Barker trust theretofore assigned by the daughter to various creditors and acquired by Forgan, so that all future annuity payments under the Barker trust would be paid to decedent during her life as security for the notes executed by the daughter and that upon the death of the decedent the annuities would be paid to the daughter; (3) that decedent would accept the notes and receive payment as therein provided; that she would release the daughter from all personal liability except as provided in the notes; that she would insert in her will or some codicil " such provision in regard to this transaction as may be deemed by any of the parties hereto requisite or proper to make the same effectual"; and that she would reassign to the daughter all her interest in the Barker annuity when the notes were paid in full.

On the same date, November 17, 1920, the daughter executed the notes as agreed, which, except as to date of maturity and as to the amount of the last note, were in form and figures as follows:

$12,000.00                                     Chicago, Illinois, November 17, 1920

Two years after date, for value received, I promise to pay to Anna B. Austin the sum of Twelve Thousand Dollars at the First National Bank of Chicago, without interest, if said Anna B. Austin is alive on November 17, 1922. If said Anna B. Austin should die before November 17, 1922, then all obligation on my part hereunder shall cease. This note is secured by assignment of my annuity of twelve thousand dollars a year created by trust agreements between John H. Barker and the First Trust and Savings Bank dated December 1, 1920.
(Signed)   MARION O. RICHARDSON.

At the time of decedent's death on June 30, 1922, she was in possession of fourteen of the notes, of an aggregate face amount of $163,921.92. It is stipulated that the notes had a total value at the date of decedent's death of $119,827.80, at which figure the respondent included them in the gross estate. This stipulated value, according to the deficiency notice, is the present worth of the notes as of the date of death, and, as we understand the stipulation, is to be taken as the value only in the event it is held as a matter of law that the notes constituted part of the gross estate for tax purposes.

The respondent's theory, as we understand it, is that the cancellation provision in the notes amounted only to an agreement to make a gift, and not a completed gift *inter vivos*, and hence the decedent died possessed of property (the money demand evidenced by the notes) which should be included in her estate. It is argued by the respondent that an endorsement by the payee of a note that at his death it shall become null and void does not constitute a gift and does not relieve the maker from payment after the payee's death. This seems to be the established rule. *Dimon* v. *Keery*, 64 N. Y. S. 1091; affd. 66 N. Y. S. 817; *Leask* v. *Dew*, 92 N. Y. S. 891. Even where a stipulation was inserted by the maker of a note payable one

day after date, providing that it should become null and void upon the death of the payee, it has been held that there was no completed gift *inter vivos*. *Rodemer* v. *Rettig*, 114 Ky. 634; 71 S. W. 869. In that case the court pointed out that the note was payable one day after date and contained no restrictions to prevent the payee from compelling payment at any time. But the facts here readily distinguish this case from those cited. The forgiveness provision in the notes here was inserted by the maker, the notes were accepted by the payee subject to that condition, and those held by decedent at her death were not then due and payable. At no time during her life could the decedent have enforced payment. At her death, by virtue of the terms of the notes, all obligation on the part of the maker ceased. When the obligation of the maker thus terminated there was nothing which could be subjected to payment of charges against the estate and expenses of administration and which was subject to distribution as a part of the estate. All of these elements must exist with respect to property that may be included in the gross estate. *Crooks* v. *Harrelson*, 282 U. S. 55. It is not enough that at the moment of death there may be property in which the decedent technically has an interest. The situation here is somewhat like that of an interest or estate limited for the life of the decedent. Such an interest is not includable in the gross estate. Art. 11, Regulations 63.

In addition to the notes themselves, we think it not only proper but necessary to take into consideration the contract executed by all the interested parties simultaneously with the notes. In that contract, the substance of which is set out above, the decedent agreed:

(1) to accept said notes and to receive payment of said sum of $175,921.92 according to the terms of said notes; (2) to release said Marion O. Richardson from all personal liability upon said indebtedness, except as expressed in said notes.

In *Farwell* v. *Commissioner*, 38 Fed. (2d) 791, the guardian of the decedent during her life paid over portions of her surplus income to persons who in the natural course of events would be her heirs. For the payments so made the recipients executed demand notes and at the same time entered into agreements in writing that such notes were enforceable only in case any of the signers contested the right of the guardian to credit himself with the payments made in settling his account. The court held (reversing the Board, 13 B. T. A. 823) that the notes so given could not be included in the gross estate of decedent, saying in part:

Since each of these notes was part of a special written agreement made by the parties at the time they were given, the estate of Lizzie W. Langdon [the decedent], which was named as one of the payees, could not collect them except in accordance with the provisions of the special agreement. * * * the conditions upon which a note is delivered may defeat the express promise to

pay. * * * Indeed, these notes are only so called herein for convenience to distinguish them from the remainder of the written contracts of which they are but a part.

In the present case the terms of the contract entered into by the interested parties, as well as the terms of the notes themselves, would preclude recovery of any of the unmatured notes held by decedent at her death, and we are of the opinion that respondent erred in including the notes in the estate.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

SEAWELL dissents.